# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DAVID EVERSON and PATRICIA EVERSON,

        Plaintiffs,

     v.                                         Case No. 12-C-0857

CITY OF WEYAUWEGA, et al,

        Defendants.

## DECISION AND ORDER REGARDING
## MOTIONS FOR SUMMARY JUDGMENT

In August of 2011 Plaintiffs David and Patricia Everson bought a 19th century church in the City of Weyauwega that they intended to use as a residence. (Ex. 1, Compl., ECF No. 1-1.) For a variety of reasons, including the fact that it was constructed before a municipal water system existed and apparently had not thereafter been used as a residence, the building has never had running water. In addition, and central to the dispute in the case, there is no water lateral from the nearest water main to Plaintiffs' property. This case is about whether Plaintiffs or the City should pay to install these few feet of lateral pipe from the nearest water main to Plaintiff's property line. According to the complaint, the estimated cost is around $8,000. (Compl. ¶ 1, ECF No. 1.) Plaintiffs demanded that the City pay the cost of installing the lateral, and the City refused. The City also refused to grant Plaintiffs an occupancy permit for the building until it has running water.

In response to the City's refusal to pay for the lateral and issue an occupancy permit for their newly purchased property, Plaintiffs, proceeding pro se, filed suit against the City and several of its officers or employees. Plaintiffs initially filed an eighty page complaint with an additional 119

pages of attached exhibits (ECF No. 1), that was later superseded by an eighty-nine page amended complaint with 151 pages of exhibits (ECF No. 15.) Plaintiffs have made a federal case out of their dispute with the City by asserting claims under 42 U.S.C. § 1983, though most of their claims appear to rely on state law. The case is now before me on cross motions for summary judgment by Plaintiffs and Defendants. (ECF No. 29, 48, 53.) In addition, Plaintiffs have filed two motions to strike various declarations and attachments submitted by Defendants in support of their motion for summary judgment and in opposition to Plaintiffs' motions. (ECF No. 73, 76.) For the reasons that follow, Plaintiffs' motions for summary judgment will be denied, Defendants' motion for summary judgment will be granted in part, any remaining state law claims dismissed, and Plaintiffs' motions to strike will be denied.

## I. Background

The material facts of this case are straightforward and, despite Plaintiffs objecting to every proposed fact by Defendants, largely undisputed. Plaintiffs, who are husband and wife, bought the property that is the subject of this case "on or about August 22, 2011 as their homestead." (Pl. Statement of Material Facts at ¶¶ 7, 10, ECF No. 31.) The property is located at 210 East Street, Weyauwega, Wisconsin 54983 and was constructed "on or about 1885." (*Id.* at ¶ 8.) Before the purchase, Plaintiffs contacted the City to inquire whether the property could be used as a residence. (*Id.* at ¶ 11.) On August 9, 2011, the City, informed Plaintiffs that the property could be used as a residence, but it would need to be connected to sewer and water service in order for Plaintiffs to occupy it. (*Id.* at ¶¶ 11, 19.)

Unfortunately, there is no water lateral from the nearest water main to Plaintiffs' property

2

line.  (*Id.* at ¶ 16.)  In a series of communications between Plaintiffs and Defendants about the installation of the water lateral, the parties established their respective positions, which remain essentially unchanged.  (*Id.* at ¶ 19, 23, 26, 28, 31, 33–34, 36, 43–45, 50–55.)  Both parties refuse to pay for cost of installing this water lateral.  (*Id.* at ¶ 21, 24, 26–30.)  Plaintiffs maintain that the installation is a public works project for which the City must pay and the ordinances that Defendants cite to are either inapplicable or void.  (*Id.* at 28, 30–32.)  After some initial confusion on the justification for its policy on charging Plaintiffs the actual cost of installation, Defendants counter that this installation is not a public works project and is governed by a municipal ordinance and rate schedule adopted in 2002, requiring the property owner pay the actual cost for initial water service.  (*Id.* at ¶¶ 21, 23–25, 27, 33–34, 36, 43–45, 50–57.)  Consistent with their position, Defendants sent estimates of the actual costs of the installation to Plaintiffs on two occasions.  (*Id.* at ¶¶ 68–69, 87.)  At some point during the dispute, Plaintiffs contacted the Public Service Commission of Wisconsin (PSCW) about the change of the water installation charge from $500.00 to actual costs, referred to as Schedule Cz-1.  (*Id.* at ¶¶ 47–48.)  The PSCW approved this change for services rendered on or after June 28, 2002.  (*Id.* at ¶ 56.)

Given the parties' inability to come to any resolution, Plaintiffs filed a complaint and amended complaint against the City of Weyauwega with the PSCW in September 2011 concerning the installation of the water lateral.  (*Id.* at ¶ 75.)  On November 10, 2011, in response to Plaintiffs' complaints, the PSCW drafted a three-page decision addressing the history of the property and the adoption of the new rate Schedule Cz-1.  (PSCW Letter at 1–3, Ex.  57, ECF No. 33-10.)  The PSCW found that the property—previously used as a "Mission Church" without indoor plumbing—did not have a water lateral installed when the water main was installed because "the

3

property apparently had no need for water service at the time." (*Id.* at 1–2.) The PSCW further determined that the "vast majority of the initial water service lateral installations in the City were paid for either by subdivision developers or through special assessments to the property owners." (*Id.*)  The PSCW concluded that "the charges for the actual cost of the installation of the water service lateral from the main through the curb stop and box are consistent with Schedule Cz-1 and are reasonable and just." (*Id.* at 3.)  In closing, the PSCW informed Plaintiffs that if they were "not in agreement with the above determinations, you may request that the PSCW open a docket pursuant to Wis. Adm. Code §§ 2.07 and 2.08 and Wis. Stat. § 196.26." (*Id.*)

Still unwilling to pay the actual costs to connect to the municipal water system, Plaintiffs contacted a drilling company in order to have a private well drilled on the property in June 2012. (Price Quote, Ex. 4, ECF No. 51-4.)  Plaintiffs also provided a written notice of their intent to drill a private well to which the City never responded.  (Pl. Second Statement of Material Facts at ¶¶ 24–25, ECF No. 50.)  The well was not drilled, however, because the City informed Plaintiffs that it does not allow the drilling of new wells within the City pursuant to Ordinance § 460.37. (*Id.* at ¶ 27.)  As with the interpretation of the ordinances related to the installation of the water laterals, the parties do not agree on the interpretation of the ordinance regarding private wells. (*Id.* at ¶ 29.)

Following the unfavorable decision on Plaintiffs' complaint to the PSCW and unsuccessful attempt to drill a private well, Plaintiffs filed suit in federal court.  Their 89-page Amended Complaint contained a litany of confusing and overlapping "causes of action":

> Count I [:] Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983 (General Allegations)
> . . . .
> Count II [:] Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 (Deprivation of Property Without Due Process of Law)

4

. . . .

Count III [:] Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 (Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution)

. . . .

Count IV [:] Violation of Civil Rights Pursuant to Tile [sic] 42 U.S.C. § 1983 (Violation of Fifth Amendment to the United States Constitution)

. . . .

Count V [:] Violation of Civil Rights Pursuant to Tile [sic] 42 U.S.C. § 1983 (Violation of Substantive Due Process Pursuant [sic] United States Constitution)

. . . .

Count VI [:] Violation of Civil Rights Pursant to Tile [sic] 42 U.S.C. § 1983 (Tortious Interference With Contract)

. . . .

Count VII [:] Violation of Civil Rights Pursuant to Tile [sic] 42 U.S.C. § 1983 (Violation of Wisconsin Statute §§ 66.0703, 66.0701)

. . . .

Count VIII [:] Violation of Civil Rights Pursuant to Tile [sic] 42 U.S.C. § 1983 (Violation of Wisconsin Statute § 62.15)

. . . .

Count IX [:] Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983 (Violation of Wisconsin Statute §§ 66.0701, 66.0703, 66.0103)

. . . .

Count X [:] Violation of Civil Rights Pursuant to Tile [sic] 42 U.S.C. § 1983 (Conversion)

. . . .

Count XI [:] Violation of Civil Rights Pursuant to Tile [sic] 42 U.S.C. § 1983 (Estoppel to Deny)

. . . .

Count XII [:] Violation of Civil Rights Pursuant to Tile [sic] 42 U.S.C. § 1983 (Estoppel)

. . . .

Count XIII [:] Violation of Wis. Stat. § 844.01 *Shanak v. City of Waupaca*, 185 Wis.2d 568, 518 N.W.2d 310 (Ct. App.1994)

. . . .

Count XIV [:] Fifth and Fourteenth Amendment, United States Constitution 42 U.S.C. §§ 1983 - Injunctive/Declaratory Relief

Count XV [:] 42 U.S.C. §§ 1983, 1988 - Injunctive/Declaratory Relief (Wisconsin Statutes §§ 66.0703, 66.0701, 66.0103 & 62.15)

. . . .

Count XVI [:] 42 U.S.C. §§ 1983, 1988 - Injunctive/Declaratory Relief (Notice of Noncompliance)

5

. . . .

Count XVII [:] Violation of Civil Rights Pursuant to Tile [sic] 42 U.S.C. § 1983 (Vagueness Doctrine)

. . . .

Count XVIII [:] Fourth [later corrected to Fourteenth] and Fifth amendment / United States Constitution 42 U.S.C. §§ 1983, 1988 - Damages

. . . .

Count XIX [:] Violation of Wisconsin Constitution

. . . .

Count XX [:] Punitive Damages.

(Am. Compl. at ¶¶ 53–88, ECF No. 15.) Counts X, XIII, XIV, XV, and XVII were dismissed with prejudice when Plaintiffs moved for voluntary dismissal after the answer to the complaint had been filed. (ECF No. 62.) The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardu*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Construing Plaintiffs' claims liberally, it appears that Plaintiffs' allege a mix of federal and state claims that can be broken down into three major categories. First, Plaintiff alleges claims under 42 U.S.C. § 1983 based on violations of the Takings Clause, Equal Protection, and Due Process (Counts I, II, III, IV, and V). Second, Plaintiff alleges a violation of Article I, §§ 1 and 13 of the Wisconsin Constitution (Count XIX). Third, Plaintiff alleges additional claims pursuant to 42 U.S.C. § 1983 predicated on violations of state statutory and common law: Wisconsin Statutes §§ 66.0703, 66.0701, 62.15, 66.0701, 66.0703, and 66.0103, tortious interference with a contract, estoppel, and estoppel to deny (Counts VI, VII, VIII, IX, XI, and XII). The remaining claims, Counts XVI, XVIII, XX appear to be the relief requested by Plaintiffs (monetary damages and injunctions), not causes of action as described in the Amended Complaint.

6

## II. Legal Standard

Under the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the non-movant's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. The responding party "may not rely merely on allegations or denials in its own pleading; rather, its response must … set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2). In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

7

### III. Motions to Strike

Plaintiffs filed a motion to strike the declarations of Jonathan M. Ray (ECF No. 54), Becky Loehrke (ECF No. 53-1), Thad Madjowski (ECF No. 53-2), Patrick Wetzel (ECF No. 53-3), David L. Werth (ECF No. 53-4), James Baehnman (ECF No. 53-5), and William L. Forrest (ECF No. 65), as well as the attachments to those declarations, on October 29, 2013. (ECF No. 73.) Plaintiffs argue that these declarations violate Federal Rule of Civil Procedure 56(c)(4), Civil Local Rule 56(b), and Federal Rules of Evidence 602, 801, and 802. Plaintiffs also contend that Defendants failed to disclose Patrick Wetzel as a witness or provide Exhibit C (ECF No. 56-1) or Exhibit D (ECF No. 56-2) in their initial disclosures or supplementary disclosures in violation of Federal Rules of Civil Procedure 26 and 37. Plaintiffs further argue that Exhibits C and D violate Federal Rules of Evidence 901, 902, 1002, 1003, 1004, and 1005. Plaintiffs' amended motion to strike, filed on October 30, 2013, is nearly identical to the original. (ECF No. 76.) The amended motion notes that the declaration of Jonathan M. Ray was filed in support of Defendants' responses to Plaintiffs' proposed facts, Defendant's motion for summary judgment, and Defendants' response to Plaintiffs' motion for summary judgment. The amended motion also provides a few additional sentences explaining Plaintiffs' arguments under Federal Rules of Evidence 1003 and 1004. Presumably, Plaintiffs intended for the amended motion to replace the original motion to strike but both remain pending on the docket.

The motions will be denied. An affidavit is by definition hearsay and would generally not be admissible at trial. Yet, Rule 56(c)(4) explicitly authorizes the use of affidavits to support factual assertions on which a motion for summary judgment is based. Affidavits offered in support of a motion for summary judgment must be made on personal knowledge, set out facts that would be

admissible in evidence, and show the affiant is competent to testify on the matters therein. Though some of the statements and/or exhibits offered by Defendants may not fully comply with these rules, motions to strike are not the appropriate vehicle to address such defects and simply add to the work required to resolve a case. *See Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725 (7th Cir. 2006) (Easterbrook, J., in chambers). Here, the Court has construed the facts in the light most favorable to the Plaintiffs. To the extent facts stated in Defendants submission do not comply with the Rule 56(c), the Court has given them no weight. Indeed, the Court has relied primarily on the pleadings in reaching its decision in the case. Since the challenged portions of the affidavits and exhibits play no role in the Court's decision of the case, Plaintiffs' motions to strike are denied.

## IV.  Analysis

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). In this case, it is undisputed that Defendants were acting under color of state law. Thus, the only remaining issue is whether Defendants deprived Plaintiffs of rights secured by the Constitution or laws of the United States.

### A.  42 U.S.C. § 1983 – State Law Claims

Plaintiffs move for summary judgment on a multitude of Wisconsin state law that Plaintiffs allege as causes of action under § 1983. While Defendants note that these are not rights enforceable by § 1983 (Def. Mot. for Summ. J. at 27, ECF No. 57), the parties spend the majority of the

9

extensive briefing on these motions discussing the questions of state and municipal law alleged through Plaintiffs' Amended Complaint.

To state a claim under 42 U.S.C. § 1983 Plaintiffs must allege deprivation of rights guaranteed by the Constitution or federal law. *Buchanan-Moorev*, 570 F.3d at 827. The Supreme Court has repeatedly stated that § 1983 safeguards certain rights, not all federal law:

> In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal right, not merely a violation of federal law. *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S. Ct. 444, 448–449, 107 L.Ed.2d 420 (1989). We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. *Wright*, 479 U.S., at 430, 107 S. Ct., at 773–774. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id.*, at 431–432, 107 S.Ct., at 774–775. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms. *Wilder*, *supra*, at 510–511, 110 S.Ct., at 2517–2518; *see also Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539–1540, 67 L.Ed.2d 694 (1981) (discussing whether Congress created obligations giving rise to an implied cause of action).

*Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997).

Needless to say, Wisconsin statutes regarding public works, special assessments by local ordinance, local ordinance creation and publication, and public utility rates and services are not within the realm described by the United States Supreme Court. Likewise, state common law and local ordinances do not create rights enforceable pursuant to § 1983. Because § 1983 only provides a remedy for deprivations of constitutional rights and certain rights created by federal law, Plaintiffs federal civil right claims based on state and municipal law—Counts VI, VII, VIII, IX, XI, and XII—are dismissed.

10

**B. 42 U.S.C. § 1983 – Constitutional Claims**

Plaintiffs move for summary judgment on three constitutional violations, though they are not always presented as distinct in the pleadings and briefs. First, Plaintiffs argue that the denial of the occupancy permit and refusal to pay for the water lateral by Defendants constitutes a taking of property without just compensation. Second, Plaintiffs contend that these same actions by Defendants violate due process. Third, Plaintiffs argue that Defendants' actions are also a violation of the Equal Protection clause of the Fourteenth Amendment. Defendants' cross motion for summary judgment moves for summary judgment on these three claims. I will address each claim in turn.

**1. Takings Clause**

Plaintiffs and Defendants spend considerable time arguing whether the action by the City constituted an uncompensated taking in violation of the Fifth Amendment, as applied to the states by the Fourteenth Amendment. Plaintiffs maintain that the City's decision to prevent Plaintiffs occupancy of the property, even if temporary, amounts to a regulatory taking. (Pl. Mot. For Summ J. at 27–28, ECF No. 30; Pl. Opp'n at 28, ECF No. 66.) Defendants argue that there is no taking when a municipality requires a recipient of services to pay a reasonable fee. (Def. Mot. for Summ. J. at 25, ECF No. 57; Def. Reply at 13–14, ECF No. 79.)

Although it is debatable whether a taking occurred here at all, Plaintiffs' claim that the Defendants' actions amount to an unconstitutional taking of their property in violation of the Takings Clause is fatally undermined by *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985). *Williamson* established two threshold inquiries for ripeness in a takings claim that both parties ignore. First, a claim that a governmental entity has taken property without just compensation is not ripe until the governmental entity has reached a final

decision regarding the regulation or action at issue. *Id.* at 186–87. Second, a claim is not ripe until the property owner has sought "compensation through the procedures that the State has provided for doing so." *Id.* at 194. This second threshold requirement follows from the fact that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* (citing *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S 264 , 297 n.40 (1981). The Fifth Amendment does not "require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." *Id.* (internal quotations omitted). Thus, a federal court will not have subject matter jurisdiction over a takings claim unless the "final decision" requirement and the "exhaustion" requirement are satisfied or otherwise excused. *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 957–58 (7th Cir. 2004).

In this case, Plaintiffs may have satisfied the "final decision" requirement, but they have certainly failed to meet the "exhaustion" requirement. Although neither party discusses whether the City had reached a final decision to charge Plaintiffs for the cost of installing the water laterals to the property line and refuse to grant the occupancy permit without running water, it is arguably apparent from portions of Plaintiffs' proposed Statement of Material Facts, which Defendants admitted, that a final decision had been made. (Pl. Statement of Material Facts at ¶¶ 52–55, ECF No. 31; Def. Resp. to Pl. Statement of Material Facts at ¶¶ 52–55, ECF No. 59.) Further, Plaintiffs filed a complaint regarding the City's decision to the PSCW, which rendered an opinion (Pl. Statement of Material Facts at ¶¶ 84–86, ECF No. 31), albeit one that Plaintiffs disagree with and now contend the PSCW have no jurisdiction to regulate the issue in this case. (Pl. Mot. for Summ. J. at 16–17, 20–23, ECF No. 30.) While Plaintiffs could have sought review of that agency decision as the PSCW advised Plaintiffs (PSCW Letter at 1–3, Ex. 57, ECF No. 33-10), it would have been

a deferential standard of review and is not required for a final decision under *Williamson*. Accordingly, the final decision requirement is likely met.

It is clear, however, that Plaintiffs have not satisfied the "exhaustion" requirement because they have not pursued the available state procedures for obtaining compensation for a taking of property by a governmental entity. Namely, Plaintiffs have not filed an action for inverse condemnation pursuant to § 32.10 of the Wisconsin Statutes. *See Gamble v. Eau Claire County*, 5 F.3d 285, 286 (7th Cir. 1993) (holding that exhaustion requirement not met when plaintiff failed to seek judicial review of the agency decision and failed to initiate an inverse-condemnation suit). Plaintiffs have not alleged or provided any evidence that they filed an inverse condemnation action. Nor can Plaintiffs argue that the procedure was unavailable to them because Wisconsin's inverse condemnation procedure extends to denial of access to property even when there is no entry upon the property. *See McKenna v. State Highway Comm'n*, 28 Wis. 2d 179, 184, 135 N.W.2d 827 (1965) ("This is not to say, however, that there can be no taking unless there is a physical occupation, for as we have previously indicated a deprivation of all access would constitute a compensable taking.") (citing *Stefan Auto Body v. State Highway Comm'n.*, 21 Wis. 2d 363, 368, 124 N.W.2d 319 (1963)); *see also E–L Enterprises, Inc. v. Milwaukee Metro. Sewage Dist.*, 2010 WI 58, ¶ 37, 326 Wis. 2d 82, 785 N.W.2d 409 ("[U]nder this court's jurisprudence, in order to state a claim of inverse condemnation under § 32.10, the facts alleged must show either that there was an actual physical occupation by the condemning authority or that a government imposed restriction deprived the owner of all, or substantially all, of the beneficial use of his property."). Because Wisconsin law offers an adequate procedure for obtaining just compensation for a taking and Plaintiffs have not availed themselves of this procedure, the inexorable conclusion based on *Williamson* is that Plaintiffs' claim against the City for an unconstitutional taking is not ripe for

13

federal review. Accordingly, summary judgment for Plaintiffs is not appropriate and the claim must be dismissed.

### 2. Due Process

Due process exists to protect individuals from arbitrary government behavior. The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Clause confers both procedural and substantive rights. *United States v. Salerno*, 481 U.S. 739, 746 (1987). Plaintiffs plead both forms of due process, but their briefs focus primarily on substantive due process. (Pl. Mot. For Summ. J. at 24–27, ECF No. 30; Pl. Second Mot. for Summ. J. at 18–21, ECF No. 49; Pl. Opp'n at 26–27, ECF No. 66; Pl. Reply at 13, ECF No. 69; Pl. Reply at 10–13, ECF No. 71.)

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted). Federal courts use a balancing test to determine "what procedures *are* necessary to ensure that a citizen is not deprived of property without due process." *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 600 (7th Cir. 2009) (emphasis in original). "Not every deprivation of property requires the full arsenal of available procedural safeguards." *Id.* (citing *Dixon v. Love*, 431 U.S. 105, 115 (1977)).

Substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Salerno*, 481 U.S. at 746. To maintain a substantive due process claim, Plaintiffs must show Defendants actions were "arbitrary and unreasonable, bearing no substantial relationship to public health, safety, or welfare." *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000–01 (7th Cir. 2008).

14

As with the takings claim, the parties spend considerable time arguing the merits of Plaintiffs' due process claims. Plaintiffs argue that Defendants actions deprived them of the ability to live in their new home, a property right that is, in their view, "well entrenched in the Bill of Rights, Fifth and Fourteenth Amendment [sic] because it concerns real property ownership, which is a fundamental interest of our Nation's history which is a constitutionally protected interest." (Pl. Mot. for Summ. J. at 26, ECF No. 30.) Defendants provide a variety of counter-arguments: (1) there is no fundamental right to "real property ownership" (Def. Reply at 11–12, ECF No. 79); (2) there is no fundamental right "to occupy a house that is not connected to the municipal water main" (Def. Mot. for Summ. J. at 23, ECF No. 57); (3) the occupancy permit is a valid use of the state police power that is rationally related to a legitimate interest (*Id.* at 23–24); and (4) there are adequate state law remedies for any deprivation. (*Id.* at 24; Def. Reply at 12, ECF No. 79.)

But the parties again fail to address whether this issue should be decided by a federal court at all given the procedural posture. As discussed above, the Amended Complaint alleges and Plaintiffs argue at length in their briefs that Defendants' actions amounted to an unconstitutional taking of their property without just compensation under the Fifth Amendment. (Am. Compl. at ¶¶ 141, 149, 158, 166–70, 225, 232, ECF No. 15; Pl. Mot. for Summ. J. at 1–2, 27–28, ECF No. 30.) In fact, Plaintiffs allege that one of the "fundamentally protected rights" that Defendant deprived them of was "the right to just compensation for taking of property." (Am. Compl. at ¶ 172, ECF No. 15.) This case is a dispute about the way that the City's regulations operate against Plaintiffs' property—a takings claim. It is not a case about failure to provide procedural or substantive due process because, for example, Plaintiffs' application for connection to the municipal water system was not reviewed according to established procedures, Plaintiffs did not receive notice or any opportunity to be heard regarding their application, or the decision to deny Plaintiffs' permit

15

application was unreasonable, arbitrary, capricious, or shocked the conscience. This case is, by any reasonable interpretation, about the Takings Clause.

The Seventh Circuit has explained that the *Williamson* "exhaustion requirement applies with full force to due process claims (both procedural and substantive) when based on the same facts as a takings claim." *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 961 (7th Cir. 2004) (citing *Hager v. City of West Peoria*, 84 F.3d 865, 869 (7th Cir. 1996)). Nor can Plaintiffs avoid the exhaustion requirement by arguing that their takings claim also encompasses due process concerns. *Id.* ("We have explained that, although we recognize that a governmental taking of property may encompass due process concerns, nevertheless, 'due process challenges are premature if the plaintiff has not exhausted possible state remedies by which to attack the zoning regulation or other state action' creating the taking.") (quoting *Covington Ct. Ltd. v. Vill. of Oak Brook*, 77 F.3d 177, 179 (7th Cir. 1996)). Accordingly, even if Plaintiffs have a fundamental right in their property worthy of due process protection and Defendants violated that right, Plaintiffs' substantive and procedural due process claims are barred from federal review until the *Williamson* threshold requirements are met.

### 3. Equal Protection

Like due process, the constitutional doctrine of equal protection is designed to protect individuals from arbitrary government behavior. The Equal Protection Clause guarantees, "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. While equal protection jurisprudence has traditionally been concerned with governmental action that disproportionally burdens certain classes of citizens, Plaintiffs' equal protection claim is a "class-of-one" claim. (Am. Compl. at ¶¶ 160–65, ECF No. 15.)

In a class-of-one claim, a plaintiff "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill.*

*of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Courts have allowed this claim in a variety of factual scenarios. *See, e.g.*, *Olech*, 528 U.S. at 562, 120 S.Ct. 1073 (unfavorable zoning decisions); *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) (baseless parking tickets); *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1023 (9th Cir. 2011) (withholding permits), *cert. denied*, 132 S. Ct. 249, 181 L. Ed. 2d 143 (2011); *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (selective regulatory enforcement). "The paradigmatic 'class of one' case . . . is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005).

To succeed on its class of one claim, Plaintiffs must prove that Defendants: (1) intentionally (2) treated Plaintiffs differently than other similarly situated property owners (3) without a rational basis. *Olech*, 528 U.S. at 564. Although prior Seventh Circuit case law required ill will or impermissible animus, it is no longer a prima facie requirement and instead operates as an alternative to the rational basis element.[1] *Woodruff v. Mason*, 542 F.3d 545, 553 (7th Cir. 2008) ("To establish its 'class of one' claim, Legacy must show that '(1) it has intentionally been treated differently from other similarly situated facilities; and (2) there is no rational basis for the difference in treatment *or* the cause of the differential treatment is a 'totally illegitimate animus'' towards it.") (emphasis in original) (quoting *Maulding Dev., LLC v. City of Springfield, Ill.*, 453 F.3d 967, 970 (7th Cir. 2006)).

---

[1] The Seventh Circuit has wrestled with and remains divided over the right "limiting principle" for class of one claims after the Supreme Court failed to endorse the "subjective ill will" theory the Seventh Circuit suggested in *Olech*. *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc) (per curiam) (affirming lower court in an even split of judges resulting in three opinions with no controlling opinion), *cert. denied*, 133 S. Ct. 654, 184 L. Ed. 2d 461 (2012). In this case, I need not reach the difficult and unsettled issue of improper motive/illegitimate purpose/rational basis because Plaintiffs admit there are no similarly situated persons.

17

It is intentionally difficult to succeed on a class-of-one equal protection claim. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). Otherwise, federal courts would be inundated with lawsuits that turn every minor discrepancy in the enforcement or application of local or state law into a federal case of constitutional magnitude. In essence, that is what the Plaintiffs claim here.

All equal protection claims begin with an inquiry into how the defendants treated other individuals compared to the plaintiffs. In close cases, drawing this comparison is difficult because of the multitude of facts that might influence a decision by a governmental entity. In a class of one claim, the relevant comparison is between the plaintiff and other "similarly situated" individuals. Thus, the first question to resolve is who are the individuals who are similarly situated to Plaintiffs in this case.

"As a general rule, whether individuals are similarly situated is a factual question for the jury." *McDonald*, 371 F.3d at 1002 (citations omitted). But this general rule does not preclude summary judgment "where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *Id.* In keeping with the "difficult" burden of proof in class of one cases, Plaintiffs "must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects." *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). The difficulty of this showing is evident across class of one cases. *See, e.g.*, *U.S. v. Moore*, 542 F.3d 891, 897 (7th Cir. 2008) ("[T]wo defendants, one charged in federal court and the other in state court, who are otherwise identical in all material respects, are not similarly situated.")*; Bell v. Duperrault*, 367 F.3d 703, 707–08 (7th Cir. 2004) (individuals submitting applications at different at different times, requesting different extensions or requesting to replace existing structures rather than build new ones are not similarly situated); *Purze*, 286 F.3d at 455 (individuals submitting

18

different variances than the plaintiff requested, submitting their plats during different time periods, or submitting variances granted by different and previous Boards are not similarly situated).

To be sure, Plaintiffs allege that there are others similarly situated that were treated differently. (Am. Compl. at ¶¶ 132, 161–63, 191, ECF No. 15.) It is an allegation that Plaintiffs carry forward into their motion for partial summary judgment. (Pl. Mot. for Summ. J. at 28–29, ECF No. 30.) Plaintiffs' position is that every homeowner in the original village area of the City of Weyauwega whose house was connected to the municipal water system—without paying for the installation of water laterals from the water main to their respective property lines—is a similarly situated individual that was treated differently. (*Id.* ("Here, the City is demanding the Eversons pay an amount greater than any other residential property owner similarly situated. All other existing residential properties located in the original Village of the City were not singled out to pay the amount the City is demanding of the Eversons for tapping in a property's water service lateral.")). Defendants contend, in response, that there are no property owners that are similarly situated because Plaintiffs' property "is unique since the building which they seek to convert to a residence was built in 1865, used initially as a church, and has *never* been connected to the City's existing water main." (Def. Mot. for Summ. J. at 26, ECF No. 57.)

In the present case, Plaintiffs' argument construes "similarly situated" requirement too broadly. In order to accept Plaintiffs' argument, I would have to conclude that there are just three "material" factors in the similarly situated analysis: (1) real property (2) located in Weyauwega (3) with running water from the municipal system. This superficial comparison is entirely inconsistent with class-of-one jurisprudence. *See, e.g.*, *McDonald*, 371 F.3d at 1002 ("It is clear that similarly situated individuals must be very similar indeed."). Plaintiffs' argument would convert the high bar for class of one claims into no bar at all. A 19th century former church, which has never

19

been connected to a municipal water system, is not "identical or directly comparable in all material respects" to residences that connected to the system at the time of or shortly after the system's construction. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). The other property owners connected to the municipal water system years earlier, when the City had not instituted the policy requiring the property owner pay the actual cost. At a minimum, an individual similarly situated to Plaintiffs would have purchased (1) real property (2) in Weyauwega (3) after the adoption of the actual cost policy (4) without running water at the time of purchase, (5) without connection to the municipal water system at the time of purchase, and (6) without water laterals from the water main to the property line at the time of purchase. This similarly situated individual must then receive different treatment from the City regarding bearing the cost of installation of water laterals to the property line. Plaintiffs have not provided any evidence of any similarly situated individual that meets one of these materially significant factors, let alone all of them.[2]

---

[2] Plaintiffs' only evidence of disparate treatment of similarly situated individuals are annual reports prepared by the City of Weyauwega Water Utility filed with the Public Service Commission from 2001 to 2011. (Ex. 44, ECF No. 32-28.) According to these reports, water mains or services "were financed with general operating revenues" (*Id.* at 9), "debt borrowings" (*Id.* at 18), "bond borrowings" and "special assessment to developer" (*Id.* at 27, 36–37, 46, 55, 75, 77), "charges for new hookups" (*Id.* at 46, 55, 77), "water capital funding and city general funds" (*Id.* at 64), and "City's water department" (*Id.* at 87, 89, 99). From these reports Plaintiffs conclude that "no new water mains or water services were financed via application of Cz-1." (Pl. Mot. for Summ. J. at 29, ECF No. 30.) However, Plaintiffs' conclusion does not necessarily follow from these reports. It is impossible to determine from the reports what, for example, "special assessment to developer" or charges for new hookups" actually means. Even if Plaintiffs' conclusion regarding the application of Schedule Cz-1 from these general descriptions is correct, the reports do not demonstrate that Plaintiffs were treated differently from similarly situated individuals. These reports never discuss the nature or location of these additions to water mains or services. Nor do the reports describe the individuals who benefitted from the new mains or services. The similarly situated requirement requires much greater specificity about the individuals who received the preferred treatment under similar circumstances. *See Purze*, 286 F.3d at 455

In fact, Plaintiffs admit that Defendants are correct that Plaintiffs' "situation is unique." (Pl. Resp. at 29, ECF No. 66; Pl. Reply at 14, ECF No. 69.) According to Plaintiffs, because there situation is unique, it is "an admission by Defendants Plaintiffs are indeed a 'class of one.'" (*Id.*) Plaintiffs misunderstand what it means to be a class of one; a class of one exists when there is different treatment of similar individuals, not when an individual's situation is different from every other person. Their admission actually demonstrates that there are no similarly situated individuals. If Plaintiffs' "situation is unique" there can be no similarly situated individuals and, therefore, there is no differing treatment prohibited by equal protection. Having admitted that there are no similarly situated individuals, Plaintiffs' equal protection class of one claim fails. In this case, summary judgment for Defendants is appropriate because "no reasonable jury could find that the similarly situated requirement has been met." *McDonald*, 371 F.3d at 1002.

Moreover, Plaintiffs have presented no evidence that the alleged disparate treatment was irrational or the result of innappropriate animus. Under Rule 56, a plaintiff's response to a properly filed motion for summary judgment must show that there exists evidence from which a properly instructed jury could find in his favor. *See Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) ("We often call summary judgment the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely." (internal citations omitted)); *Payne v. Pauley*, 337 F.3d 767, 772–73 (7th Cir. 2003) ( "[T]he Federal Rules of Civil Procedure require the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.' Conclusory allegations, unsupported by specific facts, will not suffice." (quoting Fed. R. Civ. P. 56(e))). Here, Plaintiffs have offered no evidence of inappropriate motivation or animus, instead relying solely on their allegations and

21

personal conclusions. (Pl. Mot. for Summ. J. at 28, ECF No. 30 ("The Eversons informed the City and Robert Underberg they found no rational basis for their conduct, their conduct was a usurption of law, malicious, and retaliatory, yet, continued to inflict their constitutional violations upon the Eversons."); Pl. Resp. at 28, ECF No. 66 ("Plaintiffs' [sic] have pled a proper equal protection claim.").) Thus, even if Plaintiffs were correct that a 19th century former church is "identical in all material respects" to every other residence in Weyauwega, it does not follow that the Plaintiffs themselves were unconstitutionally targeted as a result of an illegitimate animus or that Defendants had no rational basis for their action.

Thus, based on the fact that the Plaintiffs have failed to present specific and sufficient evidence to support essentials element of their claim, Defendants' Motion for Summary Judgment will be granted.

## C. Remaining State Law Claims

This Court had supplemental jurisdiction over Plaintiffs' state constitutional and other state law claims (to the extent they were actually pled) because they were "related" to the takings, due process, and equal protection claims, and the claims formed "part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). Having dismissed Plaintiffs' federal claims, the court must now decide whether to retain jurisdiction over the remaining state law claims. But what claims remain?

The viability of the claim under the Wisconsin Constitution is unclear—neither party provided any meaningful discussion of Count XIX.[3] The more complicated question is whether

---

[3] Despite filing two motions for summary judgment, Plaintiffs only mention the Wisconsin Constitution in passing in either motion for partial summary judgment. The Plaintiffs only significant discussion is a paragraph in its second reply brief that asserts that Section 1, Article I of the Wisconsin Constitution has been interpreted to be "substantially equivalent" to the due process

Plaintiffs' various state and municipal law issues that consume the bulk of the briefs are better understood as independent of Plaintiffs' § 1983 cause of action or, as discussed above, poorly pleaded § 1983 claims subject to dismissal. To be sure, the lengthy discussions of the intricacies of state law, utility regulation, and interpretation of municipal ordinances by both parties suggest that, although the Amended Complaint pleaded them as § 1983 claims, Plaintiffs did not intend to plead and Defendants do not view them as such.

Regardless, retention of the state law claims is contrary to the usual practice. Under 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over state law claims once all the federal claims have dropped out. The Seventh Circuit has described a "sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims. "Substantial judicial and party resources will probably not have been expended on the litigation, and so the economies from retaining jurisdiction over the state-law claims will be slight." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (citation omitted). Even though this court could liberally construe the Amended Complaint as pleading independent state law claims that remain unresolved and would have the discretion to retain jurisdiction, nothing supports exercising this discretion beyond the implied preference of the parties. More is needed to overcome the presumption that a district court should

---

and equal protection found in the Fourteenth Amendment. (Pl. Reply at 14–15, ECF No. 71.) For their part, Defendants similarly ignore Count XIX of the Amended Complaint. Their motion for summary judgment references the claim only in a footnote, which simply states that Plaintiffs have not "identified what provisions of the Wisconsin Constitution they claim were violated" and will not address the claim as a result. (Def. Mot. for Summ. J. at 22 n.5, ECF No. 57.) Defendants provide slightly more discussion in its opposition brief, arguing that these claims should be dismissed because Plaintiffs "have done nothing more than allude to these alleged violations" and have not "developed an argument with supporting authority for these alleged violations." (Pl. Opp'n at 16, ECF No. 63.)

relinquish jurisdiction when all the federal claims are gone. In this case particularly, the remaining state law claims—assuming they exist—would involve contentious, local, and essentially political issues that would be better addressed by a state court, not a remote federal tribunal, absent some compelling circumstances. Accordingly, the state law claims will be dismissed without prejudice.


## V. Conclusion

For the reasons given above, the Plaintiffs' motions for summary judgment are **DENIED**. Defendants' motion for summary judgment is **GRANTED** in part, and all federal claims are **DISMISSED** with prejudice. Plaintiffs' motions to strike are **DENIED**. All remaining claims are dismissed without prejudice. The Clerk is directed to enter judgment in favor of Defendants dismissing the action in its entirety.

**SO ORDERED** this __19th__ day of November, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

24